**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

MAGNOLIA BETANCES,

                    **Plaintiff,**

      **- against -**

METROPLUS HEALTH PLAN, INC.,

                  **Defendant.**

20-cv-2967 (JGK)

**MEMORANDUM OPINION
AND ORDER**

---

**JOHN G. KOELTL, District Judge:**

The plaintiff, Magnolia Betances, brought this action against MetroPlus Health Plan, Inc. ("MetroPlus"), alleging interference with the plaintiff's rights and retaliation under the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 et seq., violations of the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), 29 U.S.C. §§ 1161 et seq., discrimination and retaliation in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and discrimination and retaliation in violation of the New York City Human Right Law ("NYCHRL").

MetroPlus moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). For the reasons explained below, the motion is granted in part and denied in part.

**I**

The following facts are drawn from the Amended Complaint ("AC") and the answer, together with documents incorporated

therein and are accepted as true for the purposes of this motion.

The plaintiff worked as a facilitated enroller for MetroPlus, a subsidiary of New York City Health and Hospitals, from May 2014 to April 2018. AC ¶¶ 5, 6, 20, 32. In the twelve months prior to January 2016 and April 2018, Betances worked in excess of 1,250 hours for MetroPlus. AC ¶¶ 14-15. Audrey Bonano was Betances's supervisor. AC ¶ 21.

Betances suffered from hyperthyroidism and required treatment and regular appointments with her physicians. AC ¶ 18. On January 25, 2016, during a meeting with Betances's union representation, Efrain Perez, Betances told Bonano and Perez about her hyperthyroidism. AC ¶¶ 22-23. During that meeting, Bonano told Betances that she was not eligible for FMLA leave because she did not have enough accrued sick time. AC ¶ 24. Betances told Bonano that she would need to miss work to treat her condition and to attend doctor's visits and requested an accommodation. AC ¶ 25. Bonano did not accommodate the request and reprimanded Betances for missing time from work. AC ¶¶ 26-27. Betances was required to attend several meetings with Bonano and Perez in 2016, 2017, and 2018 to discuss her absences. AC ¶ 28. In each of these meetings, Betances inquired about FMLA leave but was repeatedly told by Bonano and Perez that she did not qualify. AC ¶ 29. As a result of these representations,

Betances believed that she was not eligible for an FMLA leave. AC ¶ 30.

Betances alleges that, when her employment was terminated, the Director of Human Resources Simran Kaur told Betances that "[t]his could have been avoided if you applied for FMLA leave." AC ¶ 33. Betances also alleges that she was not provided with a notice about her rights under COBRA and that MetroPlus continued to retaliate against her by failing to provide her with notice of her COBRA rights. AC ¶ 35. She received the COBRA notice on June 22, 2018, over sixty days after her termination. AC ¶ 37. As a result, Betances alleges that she was unable to exercise her COBRA rights and lost her health insurance coverage. AC ¶ 38.

Along with the answer to the amended complaint, MetroPlus submitted a declaration from Kaur with several supporting documents. See Kaur Decl., ECF No. 16. In these documents, MetroPlus tells a different story. MetroPlus alleges that on September 11, 2017, MetroPlus sent Betances FMLA forms, but Betances never submitted the completed forms or otherwise applied for FMLA leave. Kaur Decl. ¶¶ 4-7, Ex. 1. On February 13, 2018, Betances entered into a Stipulation of Settlement ("Settlement") to resolve disciplinary charges brought against her related to unexcused absences. Kaur Decl. ¶¶ 7-9, Ex. 2. In the Settlement, Betances pleaded "no contest" to the charges and

accepted a penalty of a thirty-day suspension. Id. During the following three months, Betances had additional unexcused absences in violation of the Settlement, and as a result was terminated on April 10, 2018. Id. ¶ 12, Ex. 4. Kaur met with Betances to discuss her separation and provided her with the COBRA package that included the notice of her eligibility for COBRA coverage. Id. ¶¶ 15-16.

## II

The standards to be applied to a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) are the same as those applied to a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). See Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006).[1] The allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. See McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all alterations, citations, footnotes, and internal quotation marks in quoted text.

that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in [the] complaint is inapplicable to legal conclusions." Id. When presented with a motion to dismiss pursuant to Rule 12(c), the Court may consider the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case, documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002); Roberts v. Babkiewicz, 582 F.3d 418, 419 (2d Cir. 2009) (per curiam).

### III

The defendants seek a dismissal of the amended complaint in its entirety because it allegedly fails to state a claim with respect to all causes of action.

MetroPlus argues that the FMLA interference claim should be dismissed because Betances has failed to allege facts to show that she was entitled to FMLA leave and because MetroPlus did not interfere with her rights.

The FMLA provides that an eligible employee suffering from a serious health condition is entitled to twelve workweeks of leave during any twelve-month period. See 29 U.S.C. §§ 2612(a)(1)(D), (c). The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" by the FMLA. Id. § 2615(a)(1). "To establish a prima facie claim of interference with rights under the FMLA, a plaintiff must establish by a preponderance of the evidence that: (1) she is an eligible employee under the FMLA; (2) defendants constitute an employer under the FMLA; (3) she was entitled to leave under the FMLA; (4) that she gave notice to defendants of her intention to take leave; and (5) defendants denied her benefits to which she was entitled by the FMLA." Reilly v. Revlon, Inc., 620 F. Supp. 2d 524, 535 (S.D.N.Y. 2009). Interference with the exercise of an employee's rights includes discouraging an employee from using a leave. Id. (citing 29 C.F.R. § 825.220(b)). A plaintiff asserting interference on a discouragement theory must offer evidence of acts of discouragement that "would have dissuaded a

similarly situated employee of ordinary resolve from attempting to exercise his or her FMLA rights." Id.

With respect to entitlement to leave under the FMLA, MetroPlus argues that Betances failed to show that she suffered from a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). As relevant here, the FMLA defines "serious health condition" as one involving "continuing treatment by a health care provider." 29 U.S.C. § 2611(11)(B). The regulations promulgated under the FMLA define "a serious health condition involving continuing treatment" as one of the following: (a) incapacity and treatment, (b) pregnancy or prenatal care, (c) chronic conditions, (d) permanent or long-term conditions, or (e) conditions requiring multiple treatments. 29 C.F.R. § 825.115. While categories (a) through (d) require at least some "period of incapacity," under category (e), the regulations require that the "condition . . . would likely result in a period of incapacity . . . in the absence of medical intervention or treatment." 29 C.F.R. § 825.115(e)(2).

The amended complaint alleges that Betances suffered from "hyperthyroidism, experience[d] complications related to hyperthyroidism, and require[d] treatment for hyperthyroidism, including regular appointments with her physicians." AC ¶ 18. However, the amended complaint does not allege either that

Betances suffered a period of incapacity or that her condition would likely result in a period of incapacity if left untreated. Accordingly, the amended complaint fails to plead sufficient facts to show that Betances had a serious health condition that entitled her to an FMLA leave. See Workneh v. Super Shuttle Int'l, Inc., No. 15-cv-3521, 2017 WL 6729297, at *4 (S.D.N.Y. Dec. 28, 2017) (dismissing an FMLA interference claim where the plaintiff failed to allege facts suggesting that he experienced a serious medical condition). This is a deficiency that could be cured by an amended complaint if the facts support such an amendment.

With respect to the last element of an interference claim, denial of benefits, MetroPlus makes two arguments. First, MetroPlus argues that the allegations in the amended complaint do not describe conduct that "would have dissuaded a similarly situated employee of ordinary resolve from attempting to exercise his or her FMLA rights," Reilly, 620 F. Supp. 2d at 535. MetroPlus relies on Di Giovanna v. Beth Israel Med. Ctr., where the court found that being told on one occasion that "there was no need to file for FMLA leave" would not dissuade an employee of ordinary resolve from attempting to exercise the employee's FMLA rights. 651 F. Supp. 2d 193, 200 (S.D.N.Y. 2009). This argument misses the mark for two reasons. As an initial matter, the alleged statements in this case, advising

Betances on multiple occasions that she did not qualify for FMLA leave, are distinguishable from a single statement that there was "no need to file for FMLA leave" in Di Giovanna and would be more likely to dissuade an employee of ordinary resolve from attempting to exercise the employee's rights. Moreover, various courts in this Circuit have found, without relying on the discouragement theory, that "failing to inform [an employee] about [the employee's] FMLA rights," Tully-Boone v. N. Shore-Long Island Jewish Hosp. Sys., 588 F. Supp. 2d 419, 424 (E.D.N.Y. 2008), or giving an employee "misleading and contradictory information . . . [which] den[ied] [the employee] the ability to understand [the employee's] rights and benefits under the FMLA," Ridgeway v. Royal Bank of Scot. Grp., No. 11-cv-976, 2012 WL 1033532, at *9 (D. Conn. Mar. 27, 2012), constitute denials of FMLA rights. The allegations that her supervisors repeatedly told Betances that she did not qualify for FMLA leave are more akin to a failure to inform about FMLA benefits or providing misleading and contradictory information about FMLA benefits than they are to mere discouragement. Accordingly, the amended complaint sufficiently pleaded that MetroPlus engaged in conduct that interfered with her FMLA rights.

MetroPlus's second argument with respect to the interference element is to dispute, as a factual matter, that

any interference occurred. MetroPlus supports this claim by providing a declaration and supporting documents that attempt to show that Betances was provided with FMLA forms and instructions, and never returned them. This evidence, at most, creates an issue of material disputed fact that cannot be resolved on a Rule 12(c) motion. See Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988) ("Judgment on the pleadings is appropriate where material facts are undisputed."). As a result, MetroPlus's evidence, in light of the allegations in the amended complaint, only shows that Betances was both provided FMLA paperwork and told repeatedly that she does not qualify for FMLA leave. Being provided with such "contradictory information" about FMLA rights can be sufficient to show that interference occurred. See Ridgeway, 2012 WL 1033532, at *9.

In any event, because of the failure to plead facts showing that Betances suffered a serious health condition within the meaning of the FMLA, the motion for judgment dismissing the FMLA interference claim is **granted**.

B

MetroPlus argues that the ADA discrimination and failure-to-accommodate claims should be dismissed because Betances failed to allege that she suffered from a disability.

The ADA makes it unlawful for an employer to discriminate "against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). To state any claim of discrimination under the ADA—whether through adverse employment action because of the plaintiff's disability or through a failure to accommodate a disability—the plaintiff must be disabled within the meaning of the ADA. See McMillan v. City of N.Y., 711 F.3d 120, 125 (2d Cir. 2013) (adverse employment action); McBride v. BIC Consumer Prods. Mfg. Co., 583 F.3d 92, 96-97 (2d Cir. 2009) (failure to accommodate).

A person is disabled under the ADA if that person has "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). Major life activities include, but are not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working," and "also include[] the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." Id. §§ 12102(2)(A)-(B). Courts in the Second Circuit follow a three-step process for determining whether a person is disabled. "First, plaintiff must show that

11

she suffers from a physical or mental impairment. Second, plaintiff must identify the activity claimed to be impaired and establish that it constitutes a 'major life activity.' Third, the plaintiff must show that her impairment 'substantially limits' the major life activity previously identified." Felix v. N.Y.C. Transit Auth., 154 F. Supp. 2d 640, 653 (S.D.N.Y. 2001); see also Tillman v. N.Y.C. Dep't of Hum. Res. Admin., No. 20-cv-01153, 2021 WL 1089647, at *4 (S.D.N.Y. Mar. 22, 2021).

The ADA Amendments Act of 2008 (the "ADAAA") and its implementing regulations make it clear that "'substantially limits' is not meant to be a demanding standard[,]" and "the threshold issue of whether an impairment 'substantially limits' a major life activity should not demand extensive analysis." 29 C.F.R. § 1630.2(j)(1)(i), (iii). Still, "not every impairment will constitute a disability[.]" Id. § 1630.2(j)(1)(ii). "An impairment is a disability . . . if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." Id.

In this case, besides alleging that she suffers from hyperthyroidism, Betances does not allege any facts to show that her condition was a disability within the meaning of the ADA. Betances does not allege which major life activity was affected by her condition or that the condition substantially limited such life activity. "A medical diagnosis, without more,

establishes only that a plaintiff suffered an impairment, and not that his ability was substantially limited by that impairment." Robles v. Medisys Health Network, Inc., No. 19-cv-6651, 2020 WL 3403191, at *6 (E.D.N.Y. June 19, 2020); see also Hedges v. Town of Madison, 456 F. App'x 22, 24 (2d Cir. 2012) (summary order) (rejecting the argument that the district court should have inferred that plaintiff was disabled because he alleged merely that he suffered from various medical conditions); Capobianco v. City of N.Y., 422 F.3d 47, 56 (2d Cir. 2005) ("Not every impairment is a 'disability' within the meaning of the ADA; rather, there are two requirements: the impairment must limit a major life activity and the limitation must be substantial.").

In her response, Betances relies on extra-record evidence that, in effect, shows that hyperthyroidism may cause serious problems if left untreated. Even if the Court could consider this evidence, the mere possibility that her condition may cause Betances serious problems would still fall short of the requisite identification of the major life activities affected by her condition and that these activities were substantially limited.

Accordingly, the motion for judgment dismissing the disability discrimination claim is **granted.**

MetroPlus argues that the retaliation claims under the FMLA, the ADA, and the NYCHRL should be dismissed because Betances failed to allege facts to support an inference of retaliatory intent or a causal connection between her protected activity and termination.

In FMLA retaliation claims, "[i]n order to make out a prima facie case, [the plaintiff] must establish that: 1) [the plaintiff] exercised rights protected under the FMLA; 2) [the plaintiff] was qualified for [the plaintiff's] position; 3) [the plaintiff] suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." Potenza v. City of N.Y., 365 F.3d 165, 168 (2d Cir. 2004) (per curiam). Similarly, under the ADA, the elements of a retaliation claim are: "(i) a plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action." Weixel v. Bd. of Educ. of N.Y.C., 287 F.3d 138, 148 (2d Cir. 2002). And under NYCHRL, "to prevail on a retaliation claim . . . the plaintiff must show that she took an action opposing her employer's discrimination and that, as a result, the employer

engaged in conduct that was reasonably likely to deter a person from engaging in such action." Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 112 (2d Cir. 2013).

Betances relies solely on temporal proximity to support the causal link for all three of these claims. And indeed, at the prima facie stage, "[i]n th[e Second] Circuit, a plaintiff can indirectly establish a causal connection to support a . . . retaliation claim by showing that the protected activity was closely followed in time by the adverse employment action." Gorman-Bakos v. Cornell Coop. Extension of Schenectady Cty., 252 F.3d 545, 554 (2d Cir. 2001). The Court of Appeals "has not drawn a bright line defining, for the purposes of a prima facie case, the outer limits beyond which a temporal relationship is too attenuated to establish causation." Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 110 (2d Cir. 2010). Nonetheless, district courts have found that a period of more than two to three months between the protected activity and the adverse employment action militates against an inference of causation. See Kamrowski v. Morrison Mgmt. Specialist, No. 05-cv-9234, 2010 WL 3932354, at *22 (S.D.N.Y. Sept. 29, 2010) (collecting cases).

In this case, Betances argues that her inquiries about FMLA leave and requests for accommodation in meetings with Bonano and Perez constituted protected activity, and her termination was the adverse employment action. Betances claims there was

temporal proximity because only a month lapsed between her last engagement in a protected activity in March 2018 and her termination on April 10, 2018. There are two problems with this contention. First, based on the pleadings and the supporting documents, the last meeting with Bonano and Perez (and thus the most recent protected activity) appears to have occurred in February 2018, not March 2018. In her response, Betances argues that the most recent protected activity was in March 2018, but nothing in the record shows that any meetings occurred in March 2018. The only reference to March 2018 in the parts of the record that Betances cites to support her argument is the statement of Betances's unscheduled absences on March 14-16, 2018, and Betances has not argued that the absences themselves were protected activity. The last meeting with Bonano and Perez evident from the record occurred on February 13, 2018, when Betances signed the Settlement. This would result in a temporal gap of two months that provides borderline support to an inference of retaliatory intent. See, e.g., Ruhling v. Tribune Co., No. 04-cv-2430, 2007 WL 28283, at *23 (E.D.N.Y. Jan. 3, 2007) (noting that "a passage of two months between the protected activity and the adverse employment action seems to be the dividing line" for inference of retaliatory intent).

Second, the fact that Betances has engaged in the same protected activity on numerous occasions since 2016 but was not

terminated until April 2018, suggests that the protected activity did not elicit a retaliatory response, thus further undermining the inference of causation. See Roberts v. The Health Ass'n, No. 04-cv-6637, 2007 WL 2287875, at *6 (W.D.N.Y. Aug. 8, 2007), aff'd sub nom. 308 F. App'x 568 (2d Cir. 2009) (concluding that "there is no temporal proximity between [the plaintiff's] requesting leave and the termination of [the plaintiff's] employment" where the plaintiff first requested leave several months before the most recent request).

Accordingly, Betances has not pleaded enough facts to support an inference of retaliatory intent, and the motion to dismiss the retaliation claims under the FMLA, the ADA, and NYCHRL is **granted**.

**D**

MetroPlus argues that the COBRA claims should be dismissed because Betances was provided with a COBRA notice on the date of her termination and because she never elected benefits under COBRA. Betances argues that regardless of her election of benefits, MetroPlus is liable for statutory damages as a result of the belated notice.

Pursuant to COBRA, "employers must allow former employees to continue health care coverage under the employer's plan if a qualifying event occurs." Riddle v. PepsiCo, Inc., 440 F. Supp. 3d 358, 362 (S.D.N.Y. 2020); see also 29 U.S.C. § 1161(a).

Termination is considered a qualifying event. 29 U.S.C. § 1163(2). When the employee is terminated, "the employer of an employee under a plan must notify the [plan] administrator . . . within 30 days." 29 U.S.C. § 1166(a)(2). The administrator must then notify the beneficiary within fourteen days. Id. §§ 1166(a)(4)(A), (c). A beneficiary may sue the administrator to recover statutory damages of up to $100 per day for failure to satisfy the notice requirements. 29 U.S.C. §§ 1132(a)(1)(A), (c)(1); see Colodney v. Continuum Health Partners, Inc., No. 03-cv-7276, 2004 WL 829158, at *12 (S.D.N.Y. Apr. 15, 2004).

In this case, MetroPlus's claim that Betances was provided with the requisite COBRA notice at the time of her termination does not resolve the claim. The amended complaint plainly contradicts that assertion. As a result, there is a dispute of material fact about when Betances received the COBRA notice which the Court cannot resolve on a motion for judgment on the pleadings. See Sellers, 842 F.2d at 642.

Furthermore, assuming that Betances's allegation about the timing of the COBRA notice is correct, and that MetroPlus is the plan administrator—a fact that MetroPlus neither admits nor denies—MetroPlus acknowledges that it would be subject to statutory damages for the failure to provide timely notice under COBRA.

Accordingly, the motion for judgment dismissing the COBRA claim is **denied.**

E

MetroPlus argues that the discrimination claims under the NYCHRL should be dismissed because Betances does not allege that she was treated less well than her colleagues.

To establish a prima facie case of disability discrimination under NYCHRL, a plaintiff must show that (1) the plaintiff was disabled within the meaning of the NYCHRL; (2) the plaintiff was otherwise qualified to perform the essential functions of her job, with or without reasonable accommodation; and (3) the plaintiff suffered an adverse employment action because of her disability. Gonzalez v. City of N.Y., 377 F. Supp. 3d 273, 301 (S.D.N.Y. 2019). "[C]ourts must analyze NYCHRL claims separately and independently from any federal and state law claims . . . construing the NYCHRL's provisions broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." Mihalik, 715 F.3d at 109. Accordingly, to satisfy the third prong of the prima facie case "a plaintiff must simply show that she was treated differently from others in a way that was more than trivial, insubstantial, or petty" and that the disabled person was "treated differently" from a non-disabled person. Williams v. Regus Mgmt. Grp., LLC, 836 F. Supp. 2d 159, 173 (S.D.N.Y. 2011).

Construing the NYCHRL broadly and making all inferences in the plaintiff's favor, the amended complaint fails to satisfy even this less demanding standard. Besides conclusory allegations of disability discrimination, Betances does not allege any facts from which it could be inferred that she was treated worse than her non-disabled colleagues in some non-trivial fashion.

However, the amended complaint also alleges a failure to accommodate a disability, and a discrimination claim based on a failure to accommodate does not require disparate treatment or a discriminatory motive. Instead, to establish a prima facie claim of failure to accommodate under the NYCHRL, "a plaintiff must demonstrate that (1) she has a 'disability' within the meaning of the statutes, (2) the employer had notice of the disability, (3) she was otherwise qualified to perform the essential functions of her job with reasonable accommodation, and (4) the employer refused to make a reasonable accommodation." Vinokur v. Sovereign Bank, 701 F. Supp. 2d 276, 293 (E.D.N.Y. 2010); see also Piligian v. Ichan Sch. of Med. at Mount Sinai, No. 17-cv-01975, 2020 WL 6561663, at *5 (S.D.N.Y. Apr. 7, 2020), report and recommendation adopted sub nom. 490 F. Supp. 3d 707 (S.D.N.Y. 2020) (discussing the difference between disability discrimination claims based on adverse employment action and those based on a failure to accommodate, namely that the latter

does not require proof of discriminatory intent). "Because the NYCHRL presumes all accommodations to be reasonable until proven otherwise, [the d]efendant bears the burden of demonstrating, as an affirmative defense, that the requested accommodation was overly burdensome." LeBlanc v. United Parcel Serv., No. 11-cv-6983, 2014 WL 1407706, at *18 (S.D.N.Y. Apr. 11, 2014); see also N.Y.C. Admin. Code § 8-102 ("The [employer] has the burden of proving undue hardship.").

The amended complaint alleges sufficient facts to state a claim of a failure to accommodate a disability under the NYCHRL. First, the plaintiff has pleaded enough facts to show she had a disability within the meaning of the NYCHRL. According to the New York City Administrative Code, "'disability' means any physical, medical, mental or psychological impairment, or a history or record of such impairment.'" N.Y.C. Admin. Code § 8-102. "[T]he definition[] of disability under . . . the New York City Administrative Code [is] broader than the ADA definition[,]" Giordano v. City of N.Y., 274 F.3d 740, 753 (2d Cir. 2001), and does not require the plaintiff to show that the "disability substantially limits a major life activity." Id. at 754. Accordingly, by pleading that she suffered from hyperthyroidism, Betances satisfied the first element.

Second, as to the notice element, Betances alleged that she told Bonano about her condition on multiple occasions.

Accordingly, the employer was on notice of her disability.
Third, Betances alleged that she was qualified to hold her
position through her knowledge, education, training, experience,
and/or qualifications. And with respect to the last element,
Betances alleges that she requested accommodation for her
disability, namely, time off to attend medical appointments, but
was not given such accommodation and was instead reprimanded for
absences that resulted from her medical care.

MetroPlus did not address the failure to accommodate claim
in its moving papers. And in its reply, MetroPlus attempts to
show that it provided an accommodation by continuing to employ
Betances and providing her FMLA forms. To the extent MetroPlus
disputes the allegation of failure to accommodate as a factual
matter, such a dispute cannot be resolved on a motion for
judgment on the pleadings. Nor can it be said that MetroPlus's
alleged responses to her request for accommodation foreclose
Betances's claim as a matter of law. Under the NYCHRL, an
accommodation request is presumptively reasonable, and the
burden is on the employer to rebut this presumption. See
Jacobsen v. N.Y.C. Health & Hosps. Corp., 11 N.E.3d 159, 167
(N.Y. 2014) ("[T]he City HRL places the burden on the employer
to show the unavailability of any safe and reasonable
accommodation and to show that any proposed accommodation would
place an undue hardship on its business."). MetroPlus has not

attempted to demonstrate the unavailability of a safe and reasonable accommodation or undue hardship.

Furthermore, under the NYCHRL, "the first step in providing a reasonable accommodation is to engage in a good faith interactive process that assesses the needs of the disabled individual and the reasonableness of the accommodation requested." Phillips v. City of N.Y., 884 N.Y.S.2d 369, 373 (App. Div. 2009). In Phillips, the Appellate Division held that an "absence [of an interactive process] represents a violation of [NYCHRL]." Id. at 374. This holding was subsequently narrowed by the New York Court of Appeals in another case to the proposition that the NYCHRL "forecloses summary judgment where the employer has not engaged in a good faith interactive process regarding a specifically requested accommodation." Jacobsen, 11 N.E.3d at 169. While a judgment on the pleadings differs from summary judgment in important respects, it similarly depends on the lack of triable issues of fact. In this case, if an interactive process occurred, the pleadings do not make any references to it or reveal what it entailed. Moreover, a 2018 amendment to the NYCHRL imposed a burden on employers to engage in a "cooperative dialogue" with employees requesting accommodations. N.Y.C. Admin. Code § 8-102. The "cooperative dialogue" requirement is even more demanding than the "interactive process" standard. See Hosking v. Mem'l Sloan-

Kettering Cancer Ctr., 126 N.Y.S.3d 98, 102-03 (App. Div.). The pleadings similarly lack any references to a cooperative dialogue. As a result, the record is not sufficiently developed at this stage with respect to Betances's accommodation request to support a judgment as a matter of law in MetroPlus's favor.

Accordingly, the motion for judgment dismissing the NYCHRL failure to accommodate claim is **denied.**

**CONCLUSION**

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit.

For the foregoing reasons, the motion for judgment on the pleadings is denied in part and granted in part. The plaintiff may file an amended complaint within thirty (30) days of this Memorandum Opinion and Order.

The Clerk of the Court is directed to close docket number 19.

**SO ORDERED.**

**Dated:**     **New York, New York**
            **July 7, 2021**

_____
**John G. Koeltl**
**United States District Judge**
